Rel: March 28, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

## CL-2024-0953

_____

## D.A.F.

### v.

## R.D.J.

### Appeal from Russell Juvenile Court
### (JU-06-247.01)

EDWARDS, Judge.

In August 2006, D.A.F. ("the father") filed in the Russell Juvenile Court ("the juvenile court") a petition seeking to have his paternity of S.L.F. ("the child") adjudicated and requesting that the juvenile court establish his right to visitation with the child. The juvenile court ordered DNA testing and set the matter for a hearing to be held on December 12,

2006. Approximately one hour before the scheduled hearing, the father's counsel filed a motion to continue the hearing because the father, who lives in Pennsylvania, could not be present. The record does not contain any order of the juvenile court addressing the motion to continue, and it appears that the hearing commenced as scheduled. After the hearing on December 12, 2006, the juvenile court entered an order on December 13, 2006, adjudicating the father's paternity of the child and scheduling a hearing on the father's request for visitation with the child for February 8, 2007. The December 13, 2006, order indicates that the father's counsel was present at the December 12, 2006, hearing but does not denote that the father was in attendance. On June 18, 2007, the juvenile court entered a judgment awarding the father visitation with the child at the discretion of R.D.J. ("the mother"). The June 18, 2007, judgment did not address child support, but nothing in the record indicates that the mother had requested child support from the father.

The record reflects that the mother filed a request for juvenile-court records in November 2013 and that her request was granted. On June 2, 2022, the father also filed with the juvenile court a request for a copy of

2

the filings in the 2006 paternity action.[1]  The record also contains a notarized letter from the father's wife, S.F. ("the father's wife"), which was also signed by the father.  In that letter, the father and the father's wife cite to Rule 60(b), Ala. R. Civ. P., and assert that the juvenile court lacked jurisdiction over the father's 2006 paternity action because the mother was married to another man, S.J., at the time of the child's birth.[2]

---

[1]The record also contains an April 2023 request from the father for copies of parts of the juvenile-court record.

[2]The father relies on the principle announced in Ex parte Presse, 554 So. 2d 406 (Ala. 1989), that an alleged biological father lacks standing to seek a paternity adjudication if the child has a presumed father who persists in his presumption.  See P.G. v. G.H., 857 So. 2d 823, 827 (Ala. Civ. App. 2002).  In 2006, Ala. Code 1975, former § 26-17-6(a), provided that "[a] child, a child's natural mother, or a man presumed to be the child's father under subdivision (1), (2), or (3) of [Ala. Code 1975, §] 26-17-5(a), may bring an action at any time for the purpose of declaring the existence of the father and child relationship presumed under subdivision (1), (2), or (3) of [§] 26-17-5(a) …."  Subdivisions (1), (2), and (3) of Ala. Code 1975, former § 26-17-5(a), set out what were commonly referred to as the marital presumptions, which provided generally that, if a child was born during a marriage or attempted marriage, the husband was the presumed father of the child.  If he was not also a presumed father, an alleged biological father was not provided standing to bring an action seeking to disprove the paternity of a man who persisted in one of the marital presumptions of fatherhood.  P.G., 857 So. 2d at 827.  Moreover, Ala. Code 1975, former § 26-17-11, provided that all men either presumed to be the father or alleged to be the father of a child "shall be made parties [to any paternity action] or, if not subject to the jurisdiction of the court, shall be given notice of the action in a

On July 13, 2022, the juvenile court entered an order stating, in its entirety:

> "CORRESPONDENCE TO JUDGE filed by [THE FATHER'S WIFE] is hereby NOTED. [THE FATHER] was adjudicated the father of the minor child on December 12, 2006 (Doc 2). No further action taken at this time. However, copies of the documents requested by [the father] can be sent upon payment of costs associated therewith."

(Capitalization in original.)

In February 2024, the father filed in this court a petition for the writ of mandamus. Ex parte D.A.F. (No. CL-2024-0084, Mar. 8, 2024). The father appended to his mandamus petition a document entitled "Notice to the Court" and a certified-mail receipt indicating that the "Notice" had been mailed to the juvenile court on September 2, 2023. The copy of the "Notice" contained in the materials accompanying the petition for the writ of mandamus bears no file stamp. In the "Notice," the father, relying on Rule 60(b), asserted that the December 2006 order

---

manner prescribed by the court and an opportunity to be heard." See J.W. v. C.H., 988 So. 2d 560, 564 (Ala. Civ. App. 2007). Of course, we have no way of knowing what evidence was presented to the juvenile court in the 2006 paternity action relating to the marriage of the mother and the mother's husband or whether the mother's husband persisted in his presumption of fatherhood, but it does not appear that the mother's husband was made a party to the father's paternity action.

4

adjudicating his paternity is void because, he contended, he had lacked standing to seek the paternity adjudication based on the mother's having been married to S.J., who was legally presumed to be the child's father. Although the certified-mail receipt bears a signature indicating that it was received at the juvenile court's address, the materials before this court in support of the father's mandamus petition did not reflect that the father's "Notice" had been docketed by the juvenile-court clerk. In addition, the materials submitted in support of the mandamus petition did not contain an order acting on the father's "Notice."

On March 8, 2024, we issued an order in Ex parte D.A.F. stating:

> "The petition for the writ of mandamus filed by [the father] is denied. The materials filed in support of the petition do not indicate that … the juvenile court … has ruled on the 'Notice to the Court,' which appears to be, in substance, a motion filed pursuant to Rule 60(b)(4), Ala. R. Civ. P. See B.E.H. v. State ex rel. M.E.C., 71 So. 3d 689, 692 n.1 (Ala. Civ. App. 2011) (explaining that a court considers the substance of a document filed by a party and not its title to determine how it should be treated under the Alabama Rules of Civil Procedure). Until the juvenile court enters an order on [the father's] motion, this court has no action of the juvenile court to review. Ex parte Dunn, 306 So. 3d 47, 50 (Ala. Civ. App. 2020); Ex parte R.S.C., 853 So. 2d 228, 234 (Ala. Civ. App. 2002)."

5

On March 14, 2024, the father filed in the juvenile court a document entitled "Request for Emergency Ruling on Motion Filed as Notice to Court, September 2, 2023" ("the request for ruling"). He attached to the request for ruling, among other things, a copy of this court's March 8, 2024, order, a copy of the "Notice to Court" referenced in our order, and a copy of the certified-mail receipt indicating both that the "Notice" had been mailed to the juvenile court on September 2, 2023, and that the juvenile court had received the certified mail. In addition, he attached to the request for ruling a copy of a 2017 Georgia judgment divorcing the mother from S.J. and a copy of a Georgia certificate of divorce indicating that the mother and S.J. had married in 1998.

On March 23, 2024, the juvenile court issued an order stating that, "[o]n review by the Court, it cannot find a filing in Alacourt dated September 2, 2023, styled as 'Notice to the Court.'" The juvenile court indicated that it would confer with the juvenile-court clerk to be certain that the "Notice" had not been filed and also set a hearing to be held on April 3, 2024. Contemporaneously, the juvenile court entered an order setting the "request for emergency ruling" for a hearing to be held on April 3, 2024.

6

On April 1, 2024, the father filed a motion requesting permission to attend the April 3, 2024, hearing via a videoconferencing application. On April 1, 2024, the juvenile court canceled the April 3, 2024, hearing and entered the following order:

> "In review of this matter and after further consultation with the Clerk of the Alabama Court of Civil Appeals, this Court cannot find in the official juvenile court record a document actually filed with the Russell County Juvenile Court Clerk styled 'Notice to Court,' purportedly filed by [the father] on September 2, 2023.
>
> "While said document was clearly filed with [the father's] Petition for Writ of Mandamus to the Alabama Court of Civil Appeals, as determined by the Court's attached Exhibit A to this Order, ... there is no filing time stamp on said document indicating that it was filed with the juvenile court, nor is the document even dated at all.
>
> "This Court has made every effort to respond to and issue orders on motions and documents filed by the [father and the father's wife]. If this document was properly before this Court, it would have ruled on it as well. Given that it was clearly not filed with the Juvenile Court Clerk, though alleged, it is hereby ORDERED, ADJUDGED and DECREED that no such 'Notice to Court' document exists in the record to rule on. Therefore, [the father's] request for any further relief is hereby DENIED as not properly before this Court."

(Capitalization in original.)

7

On April 4, 2024, the juvenile court denied the father's "motion for a continuance" as moot.[3]

On October 23, 2024, the father filed in the juvenile court a Rule 60(b) motion for relief from the 2006 paternity judgment.[4] The juvenile court set the father's Rule 60(b) motion for an in-person hearing to be held on December 3, 2024. That order explicitly stated that virtual appearances would not be permitted. On November 14, 2024, the father filed a motion to reconsider the juvenile court's prohibition of virtual attendance at the December 3, 2024, hearing. The juvenile court denied the father's motion to reconsider on November 15, 2024, and reiterated that "[a]ll parties must appear and argue their respective positions to the court."

On December 3, 2024, the juvenile court entered an order indicating that the "complaining parties" had failed to appear in person at the

---

[3]We presume that the juvenile court intended to deny the father's request to appear at the April 3, 2024, hearing via a videoconferencing application.

[4]Although the case-action-summary sheet reflects the filing of the Rule 60(b) motion, we note that the motion contains no filing stamp indicating that it was filed in the clerk's office.

scheduled hearing on the father's Rule 60(b) motion. The juvenile-court judge then stated that, because the father had initiated a case against him in the federal court, he would recuse from the matter. On December 4, 2024, the father filed a notice of appeal from the November 15, 2024, order.

> "'"Even though this issue has not been addressed by either party, this court must first determine whether it has jurisdiction over this appeal. '"Jurisdictional matters are of such importance that a court may take notice of them ex mero motu."' Naylor v. Naylor, 981 So. 2d 440, 441 (Ala. Civ. App. 2007) (quoting McMurphy v. East Bay Clothiers, 892 So. 2d 395, 397 (Ala. Civ. App. 2004)). 'The question whether a judgment is final is a jurisdictional question, and the reviewing court, on a determination that the judgment is not final, has a duty to dismiss the case.' Hubbard v. Hubbard, 935 So. 2d 1191, 1192 (Ala. Civ. App. 2006) (citing Jim Walter Homes, Inc. v. Holman, 373 So. 2d 869, 871 (Ala. Civ. App. 1979)). '[A] final judgment is a "terminal decision which demonstrates there has been a complete adjudication of all matters in controversy between the litigants."' Dees v. State, 563 So. 2d 1059, 1061 (Ala. Civ. App. 1990) (quoting Tidwell v. Tidwell, 496 So. 2d 91, 92 (Ala. Civ. App. 1986))."'"

S.J.H. v. N.T.S., 301 So. 3d 843, 847-48 (Ala. Civ. App. 2020) (quoting O.Y.P. v. Lauderdale Cnty. Dep't of Hum. Res., 148 So. 3d 1081, 1082-83 (Ala. Civ. App. 2014), quoting in turn Butler v. Phillips, 3 So. 3d 922, 925 (Ala. Civ. App. 2008)). "'The question of finality of the [judgment] may be phrased as whether there is "something more for the court to do."'"

9

Wilson v. Wilson, 736 So. 2d 633, 634 (Ala. Civ. App. 1999) (quoting

Powell v. Powell, 718 So. 2d 80, 82 (Ala. Civ. App. 1998), quoting in turn

Wesley v. Brandon, 419 So. 2d 257, 258 (Ala. Civ. App. 1982)).

The record leaves no question that the juvenile court's November 15, 2024, order, and its subsequent December 3, 2024, order leave "something more for the court to do." The juvenile court has yet to rule on the Rule 60(b) motion filed by the father, and, therefore, no final judgment capable of supporting this appeal exists. Accordingly, we dismiss the father's appeal. See S.J.H., 301 So. 3d at 848.

APPEAL DISMISSED.

Moore, P.J., and Hanson, Fridy, and Lewis, JJ., concur.